# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>RODNEY OLEAN KOLLOCK,<br><br>  Defendant. | Case No.: 18-CR-4553 DMS<br><br>**ORDER DENYING MOTION FOR SENTENCING MODIFICATION UNDER 18 U.S.C. § 3582(C)** |

Before the Court is Defendant Rodney Olean Kollock's motion to reconsider his earlier motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). The Government filed its opposition and Defendant filed a reply. For the following reasons, Defendant's motion to reconsider is granted, and Defendant's motion to reduce his sentence is denied.

## I.
## BACKGROUND

On August 6, 2019, Defendant pled guilty to possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). (ECF No. 47.). On November 1, 2019, Defendant was sentenced to 36 months of imprisonment and three years of supervised release. (Judgment, ECF No. 58.). The Court recommended that Defendant participate in the RDAP program while in custody. (*Id.*)

Defendant is 52 years old and suffers from obesity, diabetes, and mental illness. (ECF No. 65 at 2; ECF No. 70 at 2.) The Centers for Disease Control and Prevention (CDC) identifies obesity and diabetes as conditions placing an individual at increased risk of severe illness from COVID-19. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, http://cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited December 18, 2020). Defendant is currently incarcerated at FCI Phoenix where all RDAP classes have been postponed due to the COVID-19 pandemic. (ECF No. 60 at 1; ECF No. 65 at 10.) His expected release date is July 20, 2021. (ECF No. 65 at 10.) Due to the risks associated with COVID-19 and the inability to take RDAP classes while in custody, Defendant now seeks a reduction of his sentence so that he may enter the treatment program at Veterans Village of San Diego (VVSD). (ECF No. 65 at 10.)

## II.

## DISCUSSION

In general, a court may not modify a sentence of incarceration once it has been imposed, unless expressly permitted by statute or Rule 35 of the Federal Rules of Criminal Procedure. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). The First Step Act ("FSA") is such a statute. *See* Pub L. 115-391, 132 Stat. 5194, 5239 (2018). Among the criminal justice reforms implemented by the FSA, Congress amended 18 U.S.C. § 3582(c)(1)(A) to allow the defendant to move the district court for compassionate release after exhausting the Bureau of Prison ("BOP") process.

Section 3582(c) of Title 18 of the United States Code provides that a court may not modify a term of imprisonment except "upon motion of Director of the Bureau of Prisons, or upon motion of the defendant." A defendant may bring a § 3582(c) motion after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to act or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Administrative exhaustion is a prerequisite to filing the motion in district court, and "[e]xhaustion occurs

when the BOP denies a defendant's application or lets thirty days pass without responding to it." *United States v. Mondaca*, No. 89-cr-0655-DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) (internal quotation marks and citations omitted). Thereafter, the Court may consider the applicable standards set forth in § 3553(a) and determine whether "extraordinary and compelling reasons" warrant a sentence reduction consistent with "applicable policy statements issued by the Sentencing Commission." Here, Defendant submitted his request for compassionate release to the warden on February 31, 2020. (ECF No. 70 at 1.) On August 19, 2020, the warden denied Defendant's request. (*Id.*) Because the warden has denied Defendant's request, the Court may now address the motion on its merits.[1]

The FSA allows a district court to modify a sentence and grant compassionate release if it finds "extraordinary and compelling reasons" warrant such a reduction, the reduction complies with 18 U.S.C. § 3553(a), and the defendant "is not a danger to the safety of any other person or to the community[.]" *See* 18 U.S.C. § 3582(c)(1)(A); United States Sentencing Guidelines ("U.S.S.G") § 1B1.13. Defendant contends he meets the foregoing criteria. As the movant, Defendant bears the burden of establishing that he is eligible for a sentence reduction. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

1. Extraordinary and Compelling Reasons

Defendant argues he is eligible for compassionate release because his underlying health conditions make him particularly vulnerable to COVID-19. (ECF No. 65 at 3-6; ECF No. 70 at 2.) The Sentencing Guidelines provide that extraordinary and compelling reasons may exist for compassionate release where a defendant suffers from, among other conditions, "a serious physical or mental condition … that substantially diminishes the

---

[1] The Court denied Defendant's earlier motion to reduce his sentence because it did not appear that Defendant had exhausted his administrative remedies. (ECF No. 69.) Now that it is clear that Defendant has exhausted his administrative remedies, the Court will reconsider Defendant's earlier motion to reduce his sentence.

ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G § 1B1.13, cmt n.1(A)(i)(I). Defendant suffers from obesity and diabetes, conditions that the CDC deems to increase the risk of serious illness from COVID-19. Defendant also suffers from mental illness and believes that his age of 52 years puts him at a "slightly elevated risk from coronavirus." (ECF No. 65 at 5-6.)

The Government contends that Defendant is not entitled to compassionate release because he has failed to show that his medical conditions qualify as "extraordinary and compelling reasons" supporting his release. (ECF No. 62 at 8-10; ECF No. 72 at 7-12.) The Government acknowledges that the CDC has identified obesity as a medical condition that increases the risk of serious illness from COVID-19. (ECF No. 72 at 8.) Nevertheless, the Government argues that in this case, where Defendant's BMI is "30.1" which is only slightly above the CDC's BMI threshold of 30, obesity is not enough to be deemed "extraordinary and compelling circumstances." (ECF No. 72 at 8-9.) As for Defendant's diabetes, the Government acknowledges that the CDC has identified Type 2 diabetes as a medical condition that increases the risk of serious illness from COVID-19. (ECF No. 72 at 11.) However, the Government notes that there is no evidence that Defendant suffers from diabetes because it is not recorded in the pre-sentence investigation report and Defendant denied having diabetes during his last medical visits prior to filing his motion for compassionate release. (*Id.*) If Defendant does have diabetes, the Government asserts that it appears that Defendant can manage it without medication or treatment. (*Id.*) Therefore, the Government argues that even if Defendant has diabetes, this is not enough to be deemed "extraordinary and compelling circumstances." The Government also questions Defendant's claim of mental illness, specifically post-traumatic stress disorder from "serving in the U.S. Navy during Operation Desert Storm." (ECF No. 72 at 5.) The Government questions Defendant's claim of post-traumatic stress disorder because records indicate that Defendant's military service lasted from March 1993 to March 1994. (*Id.*) However, the Department of Defense defines the period for Operation Desert Storm as

between August 7, 1990 to January 15, 1991 and the U.S. Navy recorded one death during the entire time Defendant was enlisted. (*Id*.) Finally, the Government states that Defendant's age is neither extraordinary nor compelling to reduce Defendant's sentence. (ECF No. 72 at 8.)

At the time of filing of the Government's response to Defendant's motion to reconsider, FCI Phoenix had one positive case of COVID-19 among the inmates. (ECF No. 72 at 6.).[2] In addition, mental illness and Defendant's age are not listed as risk factors by the CDC. Given that Defendant is just slightly over the threshold to be considered obese, and is able to provide self-care for his diabetes, Defendant fails to show that his medical conditions, combined with the level of treatment he is receiving in custody, "substantially diminish[]" his ability "to provide self-care within the environment of a correctional facility" during the pandemic. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

2. <u>Danger to Others or the Community</u>

Even where extraordinary and compelling reasons exist, the court must consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1.B1.13(1)(A), (2) cmt. n. 1. To make this assessment, the Court is directed to the factors set out in § 3142(g), including, among other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and drug and alcohol abuse; and (3) the nature and seriousness of the danger to any person or the community that release would impose. These factors are addressed in turn and overlap with the § 3553(a) factors.

---

[2] Defendant states that he is currently in BOP quarantine and will be eligible for release to a halfway house as early as December 21, 2020, where he would be able to remain until the completion of his sentence. (ECF No. 75 at 3.)

5

18-CR-4553 DMS

While Defendant was convicted of possession of methamphetamine with intent to distribute, a non-violent offense, the Government asserts that Defendant poses a danger to the community because of his extensive criminal history. (ECF No. 72 at 13.) Defendant's criminal history dates back to 1994 when he was charged for possessing and selling cocaine. (PSR at ¶ 37-38.) In 2004, Defendant was arrested for possession of drug paraphernalia, resisting arrest, and assaulting a peace officer. (PSR at ¶ 58.) Specifically, Defendant struck the officer in the forehead with his fist before running away. (*Id.*) Later, when Defendant was brought to a hospital, he attempted to hit one of the doctors. (PSR at ¶ 59.) During another arrest in 2013, Defendant lunged towards the hood of a vehicle to put his mouth on top of suspected drugs, and when the officer attempted to stop him, Defendant landed on top of the officer who eventually had to call for backup. (PSR at ¶ 61.) In 2014, Defendant was charged with battery. (PSR at ¶ 68.) Finally, on January 22, 2019, while on pre-trial release in this case, Defendant was found trespassing, provided false information to a peace officer, and had a methamphetamine pipe. (PSR at ¶ 74.) Defendant acknowledges his criminal record and asks the Court for an early release so that he can participate in VVSD's drug and alcohol treatment program. (ECF No. 65 at 9-10.) Defendant's long criminal record indicates a propensity for violence or danger to others. The Court finds that Defendant fails to meet his burden to show that he would not be a danger to others or the community.

3. <u>§ 3553(a) Factors</u>

Finally, the Court must consider "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) provides that the sentencing court must impose a sentence that is "sufficient, but not greater than necessary … (A) to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(A)-(D). The court also

must consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(1),(6).

Defendant contends that these factors weigh in favor of his release because Defendant's conviction was for "a non-violent, low-level drug case where he planned to give the drugs to another for no remuneration." (ECF No. 65 at 9.) Defendant also argues that had he been able to participate in the RDAP program, his successful completion of the program would have taken nearly a year off his sentence and he would be nearing his release date now. (ECF No. 65 at 10.) In response, the Government explains that the RDAP program is in high demand and there is often a wait list to participate. (ECF No. 72 at 8.) The Government also states that there is no basis for Defendant to claim that he is entitled to a reduction in his sentence because he *may* have successfully completed the RDAP program if given the opportunity. (*Id.*) The Court agrees.

The Government also contends that the § 3553(a) factors weigh against release because the Court sentenced Defendant to 36 months in November 2019 after already considering the § 3553(a) factors. (ECF No. 72 at 14.) As discussed earlier, Defendant has a long criminal history that includes arrests while on pretrial release in this case. (PSR at ¶ 14.) Under § 3553(a), the Court finds that Defendant's 36-month sentence is not greater than necessary to address the overarching goals of punishment, deterrence, protection of society, and rehabilitation. These factors weigh against releasing Defendant at this time.

//
//
//
//
//
//

## III.

## CONCLUSION AND ORDER

For these reasons, Defendant's motion for compassionate release is respectfully denied.

**IT IS SO ORDERED.**

Dated: December 21, 2020

_____
Hon. Dana M. Sabraw
United States District Judge